## West Chicago Street Railway Company v. Mary B. McCallum.

1. STREET CARS—*Exercise of Care at Crossings.*—Street car com_ panies should exercise great care at crossings, more especially when trains moving in opposite directions arrive at a crossing about the same time.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. NATHANIEL C. SEARS, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed January 7, 1897.

### STATEMENT OF THE CASE.

This was an action by Mary B. McCallum to recover damages for personal injuries, alleged to have been sustained by reason of the negligence of the West Chicago Street Railroad Company. The declaration consists of three counts, which allege:

First. That on the 22d day of June, 1893, while the plaintiff was riding, with due care, in a carriage, on California avenue, at the intersection of Madison street, one of the defendant's Madison street cable cars negligently struck the carriage, thereby throwing the plaintiff to the ground, causing the injuries complained of.

Second. That the defendant, at the intersection aforesaid, negligently operated its car, in this, that it did not slacken the speed or give warning of the approach of its grip-car at the said intersection, thereby causing the injuries complained of.

Third.   That the defendant operated its grip-car at the said intersection at a dangerous rate of speed, thereby causing the injuries complained of.

At the trial, the jury found a verdict in favor of the plaintiff, and assessed her damages at $2,000, and judgment having been entered upon this verdict, the defendant appeals.

Egbert Jamieson and John A. Rose, attorneys for appellant.

Edward E. Perley, attorney for appellee.

Mr. Justice Waterman delivered the opinion of the Court.

Appellee testified :   " The accident occurred at 8 o'clock in the evening, on the corner of California avenue and Madison street; I was going across California avenue in my buggy, alone, from the south.   I was driving north; on California avenue there was a two-seated rig standing waiting for the train to go east.   I heard the signal as I drove up, and I stopped on the west side of this rig, and the train passed over from the west, and stopped on the east side of California avenue on Madison, and the other carriage started up, and I started up.   My horse was along on the west side of the other carriage, and I looked east when I started, and the east bound train stopped on the east side of the street. We started across and I heard no bell sound at all.   As my horse got on the north track—I presume the buggy stood about midway between the two tracks, I looked east.   I saw the headlight before I heard the bell.   I urged, slapped the horse on the back with the lines and urged him.   She went across as rapidly as she could.   I was almost across the track when the grip struck the buggy, breaking a spoke, turning it over and throwing me out.   I was between this vehicle in front of me and to the east of me, and the west curb of California avenue.   The top of my buggy was half up.   I could see to the right or left of me as I sat in the buggy; there was nothing to obstruct my view, right or

West Chicago Street Ry. Co. v. McCallum.

left. I could see west on Madison street from where I was sitting waiting for the east-bound grip. I suppose I could see almost half a block. I could not see east at all because the west-bound grip stopped on the east side. I couldn't see anything for the east-bound grip, until I got on the track, and saw the light of the west-bound grip. It was a very short time. I was driving from the point where I stopped for the east-bound grip to pass to the point where I first saw the headlight of the west-bound grip. Between those two points the horse trotted. When she started she immediately struck into a trot. At the time I first saw the headlight the buggy was going across the track the same as I was, and it was so far ahead of me that I couldn't see the headlight; it cleared the track and I didn't. I couldn't see behind the buggy that was in front of me at the time I first saw the light. I made an effort to see whether there was a west-bound grip. As I went upon the track I saw the east-bound train standing on the east side of California avenue; I didn't see anything else and I looked east. There was nothing opposite that grip to prevent my seeing the grip on Madison street except the grip on the east side of me. The carriage that was east of me was moving north, the same direction that I was going, and it went rapidly, as rapidly as I did."

Mr. Richardson testified as follows:

" Just before this accident I was on the grip-car traveling west. The buggy was moving north. I was on the front side of the grip, on the left hand side—south side. There were two sets of street car tracks in the street. The car was running on the north track, and Mr. Devoll was with me. The car was going west, east of California avenue when I first saw the buggy.

The car was about forty feet from California avenue when I first saw the buggy. The buggy was just coming up California avenue, and had just come in sight. I saw it the minute that it came in sight. What had prevented me seeing it before was, there was a building on the corner. The first thing I noticed there was an obstruction in front,

a wagon, I think, a heavy wagon, and the gripman commenced to ring his bell, and the wagon that was in front, as usual, kept going right along, and the car was slacking up, to the best of my judgment, right along, and the gripman kept on ringing his bell, and it did not appear to alter the course of the vehicle, and just as the buggy got across the street car track, or about to get across, it struck the hind wheel, and I seen a lady go out over the dashboard. The wagon was traveling north. The car traveled about two or three feet after it struck the buggy. The bell on the grip-car was ringing from the time the buggy got in sight until the car stopped."

Four witnesses, none of whom were employes of the company, testified to the same effect.

Mr. Richardson also testified: "I did not take my eyes off that horse from the instant I first saw him coming into view on California avenue, south of the building line of Madison street, until the collision took place. I kept my eyes on the horse all the time, as I apprehended an accident. The horse was not running at the time of the accident, but was walking; he had walked from the time I first saw him until that accident. I didn't see the woman make any effort to hurry the horse, that was what attracted my attention. If she looked toward me, I didn't see her; I kept my eyes on the horse."

Had plaintiff looked east, it would seem that she would have seen the west-bound train, as several persons upon it saw her; her attention may have been absorbed by the east-bound train.

Street car companies should exercise great care at crossings, more especially when trains moving in opposite directions arrive at a crossing at about the same time. Chicago City Ry. Co. v. Jennings, 157 Ill. 274.

The question of whether the plaintiff exercised ordinary care, and whether the defendant was negligent, was fairly submitted to the jury, under evidence such that a majority of the court are of the opinion we ought not to interfere with the judgment of the court below.

I. C. R. R. Co. v. James.

While not approving of the phraseology of the first and third instructions given for the plaintiff, we find in neither any such error as we think worked any harm to the defendant.

The judgment of the Superior Court is affirmed.